**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDGAR SANTIAGO ASIMBAYA JARAMILLO,<br>Petitioner,<br>v.<br>RAUL MALDONADO, WARDEN, METROPOLITAN DETENTION CENTER, Brooklyn, New York;<br>KENNETH GENALO, Acting Field Office Director, New York City Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement;<br>DAVID J. VENTURELLA, Senior Official Performing the Duties of Director, U.S. Immigration and Customs Enforcement;<br>MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and<br>TODD BLANCHE, Acting Attorney General of the United States,<br>Respondents. | Civil Action No.<br>________________ |

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241;**
**EMERGENCY MOTION FOR ORDER TO SHOW CAUSE**
**AND TEMPORARY RESTRAINING ORDER**

## PRELIMINARY STATEMENT

1. Edgar Santiago Asimbaya Jaramillo ("Petitioner"), by counsel, respectfully petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and moves by Emergency Order to Show Cause and Temporary Restraining Order. This petition is filed on an emergency basis to prevent Petitioner's unlawful transfer or removal.

2. Petitioner has not had an opportunity to interview with counsel. Since Respondents have not yet provided counsel with access to Petitioner, nor produced any recent detention documents or the opportunity to review them with him, the factual allegations here are pleaded

upon information and belief, except where otherwise stated, based principally on the personal knowledge of Petitioner's mother, Alexandra Jaramillo, and counsel's emergency investigation.

3. Petitioner reserves the right to amend or supplement this Petition as more facts become available.

## FACTS

4. Petitioner is a forty-one-year-old citizen of Ecuador and the father of a United States citizen daughter. He has lived in the United States for approximately thirty-four years, having arrived in or about June 1992 at the age of eight to join his parents. In or about 2017, the federal government affirmatively granted Petitioner deferred action under the Deferred Action for Childhood Arrivals ("DACA") program, recognizing his eligibility for deferred action and issuing him employment authorization and a Social Security number. Upon information and belief, he has been gainfully employed transporting food products and has regularly filed tax returns for many years.

5. On July 21, 2026, ICE officers arrested Petitioner while he sat in his parked vehicle outside his residence in Bay Shore, New York. Upon information and belief, he complied fully and did not resist. Before his family could learn what had happened, ICE transferred him to Delaney Hall Detention Center in New Jersey and later to the Metropolitan Detention Center in Brooklyn, New York (“MDC Brooklyn”), where he remains confined. (**See attached Exhibit A – ICE Detainee Locator**).

**6.** On information and belief, no officer showed or served Petitioner with a judicial warrant, an administrative arrest warrant, or any other process at the scene, and no officer explained the legal basis for the seizure. His family has received no arrest paperwork, no notice of the statutory basis for his custody, and no explanation of why he was taken.

7. DHS and ICE are not authorized to do that. The Constitution, 8 U.S.C. § 1357(a)(2), and DHS's own regulations permit a warrantless interior immigration arrest only when an officer has reason to believe that the person is likely to escape before a warrant can be obtained. Nothing about a man sitting in his own parked vehicle outside the home where he lives suggests a risk of flight. Upon information and belief, he has lived in this country since childhood, identified himself to the federal government through the DACA process, worked steadily, and filed tax returns in his own name for many years. Those facts demonstrate stability and strong community ties. They do not support any reasonable belief that he was likely to escape before a warrant could be obtained.

8. Nor have Respondents identified what statute they claim authorizes the custody itself. They have not said whether they rely on 8 U.S.C. § 1225, § 1226, § 1231, or something else. Each of those provisions carries its own predicates and its own required process, and on the facts presently known, none of them has been shown to support what happened on July 21: § 1226(a) authorizes arrest "on a warrant," and no warrant has been shown or produced; § 1225 addresses applicants for admission, not a man arrested outside his own home more than three decades after he entered the country as a child; and § 1231 presupposes an administratively final removal order that is not known to exist.

9. The Government may not arrest first and assemble the legal theory later. If Respondents claim a warrant, they must produce it and show when it was issued. If they claim a warrantless arrest, they must show a contemporaneous reason to believe Petitioner was likely to escape before a warrant could be obtained. If they claim a removal order, they must produce it, together with proof that Petitioner ever received notice of any proceeding. His life history points in precisely the opposite direction from flight: three decades in one country, a daughter, a trade,

deferred action granted by the Government itself, and years of telling the Government exactly who he is and what he earns.

10. The consequences of this detention are immediate and continuing. Petitioner's detention has abruptly taken a father from his United States citizen daughter and a son from his mother. Upon information and belief, Petitioner also suffers from high blood pressure that requires daily medication, so that every additional day in custody carries a concrete risk to his health.

11. The writ exists for precisely this moment: when the Executive has a person behind a locked door but cannot yet show the Court the lawful authority that put him there. Petitioner asks for immediate release under reasonable conditions. At minimum, he asks for an immediate return certifying the true cause of detention, production of the complete arrest and custody record, a prompt evidentiary hearing, confidential access to counsel, and temporary protection against transfer or removal before meaningful review can occur.

**PARTIES**

12. Petitioner Edgar Santiago Asimbaya Jaramillo is a native and citizen of Ecuador, born in Pichincha Province, Ecuador. Upon information and belief, he was born on July 26, 1985, and is forty-one years old. His Alien Registration Number is A 094-023-031; the records associated with that number are in Respondents' possession.

13. Before his arrest, Petitioner lived in Bay Shore, New York. That residence is the established home to which he can return immediately upon release.

14. Respondent Raul Maldonado is the Warden of the Metropolitan Detention Center, Brooklyn ("MDC Brooklyn") is Petitioner's immediate physical custodian. He is sued in his or her official capacity. If the proper name of the current Warden differs, Petitioner requests leave to amend and automatic substitution under Federal Rule of Civil Procedure 25(d).

15. Respondent Kenneth Genalo is the Acting Field Office Director for the New York City Field Office of ICE Enforcement and Removal Operations. He is responsible for ICE custody, detention, transfer, and removal decisions affecting Petitioner and is sued in his official capacity.

16. Respondent David Jeremy Venturella is the Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement. He is sued in his official capacity because ICE exercises legal custody, administers detention policy, and controls records necessary for complete relief.

17. Respondent Markwayne Mullin is the Secretary of the United States Department of Homeland Security. He is sued in his official capacity because DHS supervises ICE and the detention and removal functions challenged here.

18. Respondent Todd Blanche is the Acting Attorney General of the United States. He is sued in his official capacity to the extent the Department of Justice, the Executive Office for Immigration Review, or the Attorney General possesses records, authority, or obligations necessary for complete relief.

19. All Respondents are sued only in their official capacities. If any officeholder changes or the Court determines that another immediate custodian should be named, Petitioner requests automatic substitution under Federal Rule of Civil Procedure 25(d) and leave to amend.

## JURISDICTION AND VENUE

20. Petitioner is currently detained at the Metropolitan Detention Center, 80 29th Street, Brooklyn, New York 11232, within the Eastern District of New York. Venue is proper in this District because Petitioner is detained here and because he was arrested in Bay Shore, New York, within this District.

21. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3) because Petitioner is in federal custody and alleges that his custody violates the Constitution, federal statutes, and federal regulations.

22. This Court also has jurisdiction under 28 U.S.C. §§ 1331, 1361, 1651, 2201, and 2202, and authority under Article I, Section 9, Clause 2 of the Constitution, insofar as necessary to protect the writ, compel legally required action, preserve jurisdiction, and declare the parties' rights concerning present custody.

23. Section 2243 directs the Court to act promptly. It requires the custodian to make a return certifying the true cause of detention and directs the Court to hear and determine the facts and dispose of the matter as law and justice require.

24. A core challenge to present physical custody ordinarily proceeds against the immediate custodian in the district of confinement. Rumsfeld v. Padilla, 542 U.S. 426, 434–35, 443 (2004); Ozturk v. Hyde, 136 F.4th 382, 387 (2d Cir. 2025). Petitioner is confined at MDC Brooklyn in Brooklyn, New York, within the Eastern District of New York. Venue and habeas jurisdiction are therefore proper in this District.

25. Jurisdiction attaches when the petition is filed and is not defeated by a later transfer. Ex parte Endo, 323 U.S. 283, 306–07 (1944); Ozturk v. Hyde, 136 F.4th 382, 388 (2d Cir. 2025); Liriano v. Mukasey, 552 F.3d 269, 273 (2d Cir. 2009). Respondents should not be permitted to move Petitioner beyond the Court's practical reach while withholding the records that supposedly authorize custody.

26. This is not a petition for review of any removal order. So far as Petitioner's family and counsel presently know, no administratively final removal order exists, and counsel's investigation is ongoing. Petitioner does not ask this Court to decide whether he is removable or

whether he is entitled to any immigration status. He challenges the legality of the July 21, 2026 seizure and his present detention. If Respondents later identify an order, Petitioner still does not ask this Court to review its validity.

27. The Supreme Court has rejected readings of 8 U.S.C. § 1252(b)(9) that would sweep ordinary detention claims into removal-order review. Jennings v. Rodriguez, 583 U.S. 281, 293–95 (2018). It has likewise entertained detention claims under § 2241 notwithstanding the INA's review provisions. Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001).

28. Section 1252(g) is narrow. It applies to the discrete decisions to commence proceedings, adjudicate cases, or execute removal orders; it does not erase review of the manner and legality of a seizure or the statutory basis for present physical custody. Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 482, 485 n.9 (1999).

29. The claim is therefore materially different from a direct challenge to a removal order. The question is whether Respondents lawfully arrested and continue to detain Petitioner under an identified statute and completed process. See Ozturk v. Hyde, 136 F.4th 382, 394, 396–97 (2d Cir. 2025) (distinguishing arrest-and-detention claims from removal review).

30. To the extent the Court concludes that a discrete request belongs in a petition for review, Petitioner asks the Court to sever and transfer only that request to the United States Court of Appeals for the Second Circuit under 28 U.S.C. § 1631, while retaining the custody claims that would otherwise become meaningless after transfer or removal. See Ozturk v. Hyde, 136 F.4th 382, 388–90 (2d Cir. 2025) (applying § 1631 to preserve habeas jurisdiction notwithstanding a subsequent transfer).

31. The All Writs Act authorizes temporary orders necessary or appropriate in aid of this Court's jurisdiction. 28 U.S.C. § 1651(a). That authority permits the Court to preserve

Petitioner's person, access to counsel, and the evidence needed for habeas review while the true cause of detention is determined.

## FACTUAL ALLEGATIONS

### A. Edgar Has Lived in the United States for More Than Three Decades, Since He Arrived as a Child

32. The factual allegations are based on the personal knowledge of Petitioner's mother, Alexandra Jaramillo; the ICE online detainee locator; counsel's emergency investigation; and the limited records presently available. Counsel has not yet been permitted or able to communicate with Petitioner.

33. Respondents have not yet produced the arrest records, any warrant, any custody determination, any risk assessment, or the administrative file. Allegations concerning ICE's internal actions, records, timing, and decision-making are therefore pleaded on information and belief and may be supplemented after Respondents certify the true cause of detention and produce the record.

34. Upon information and belief, Petitioner entered the United States in or about June 1992, when he was approximately eight years old, to reunite with his parents, who had immigrated before him. What followed was not a life in hiding. It was approximately thirty-four years of growing up, working, raising a daughter, paying taxes, and accumulating the ordinary records of a person who has built his entire adult life in New York.

35. In or about 2017, the federal government granted Petitioner deferred action under the Deferred Action for Childhood Arrivals program, together with employment authorization and a Social Security number. To obtain that grant, Petitioner voluntarily submitted his identity, address, and biographical information to the Government. A man trying to become invisible does not register himself with the federal government and send it his name, address, and fingerprints.

36. Upon information and belief, Petitioner has been gainfully employed transporting food products and has regularly filed tax returns and paid taxes for many years.

37. Upon information and belief, Petitioner has no criminal convictions of any kind, in the United States or anywhere else, and has no history of violence, weapons offenses, gang involvement, or threats of any kind.

38. While Petitioner appears to have pending criminal charges in New York, he has consistently appeared for multiple court proceedings, has been represented by counsel throughout those proceedings, and has actively litigated the cases. Upon information and belief, the state court has allowed Petitioner to remain at liberty, rather than in pretrial detention, while those proceedings are pending, reflecting a determination that detention was not warranted under the applicable standards governing pretrial release.

39. Petitioner has long-term, deep, and demonstrable ties to his community: approximately thirty-four years of continuous presence since childhood, a fixed residence in Bay Shore, New York, his mother, and his United States citizen daughter.

40. Upon information and belief, Petitioner suffers from high blood pressure and requires daily medication. Continued detention places his health at concrete, ongoing risk.

**B. A Family Torn by This Detention**

41. Petitioner is the father of a United States citizen daughter. His sudden detention removed far more than his presence from one household; it removed a father from his daughter's daily life and a son from his mother, while the family scrambles to understand, from a detention facility in another state, why he was taken at all.

42. Each additional day of detention intensifies the emotional hardship on Petitioner's family, endangers his health, and pushes him farther, both physically and practically, from the daughter, mother, and community that firmly anchor him to New York.

**C. No Known Final Order of Removal**

43. Counsel's emergency investigation is ongoing. Counsel has identified Petitioner's Alien Registration Number and is working to confirm his complete immigration history; the complete record is in Respondents' possession.

44. 43. Neither Petitioner's mother nor counsel is aware of any administratively final order of removal ever having been entered against Petitioner, and neither is aware of his ever receiving notice of any such order. On information and belief, no administratively final order of removal exists.

45. In fact, Mr. Asimbaya's immigration proceedings appear to have been administratively closed in or about 2014, further demonstrating that the Government has made no meaningful effort to remove him from the United States for more than a decade. (**See attached Exhibit B -Screenshot from the EOIR Automated Case Information System**).

46. If Respondents contend that a final removal order exists, for example, an order entered in absentia at some point during Petitioner's more than three decades in the United States, they must produce the order, the charging document, and proof that notice was served on Petitioner in a manner reasonably calculated to reach him, and they must explain precisely how that order

bears on the statutory basis for his present custody. The alternative allegations in Claim Five below address that contingency.

47. Until Respondents produce the actual custody record, the Court should not infer removal orders, statutory predicates, or procedural steps from Respondents' mere say-so.

**D. The July 21, 2026 Arrest Outside His Home**

48. On July 21, 2026, Petitioner was sitting in his parked vehicle outside his residence in Bay Shore, New York.

49. He was not at a border, an airport, or a port of entry. He was more than three decades into a life in the interior of the United States, outside the home where he lives.

50. ICE officers arrested him there and took him into custody. Upon information and belief, he complied fully, did not resist, and was not accused of resisting.

51. On information and belief, no officer showed or served Petitioner with a judicial warrant, a Form I-200 administrative arrest warrant, a Form I-205 warrant of removal, or any other process at the scene, and no officer explained the legal basis for the seizure.

52. Upon information and belief, the family received no warrant, no arrest paperwork, and no explanation of the legal basis for the seizure. Counsel confirmed through the ICE online detainee locator that Petitioner is confined at the Metropolitan Detention Center in Brooklyn, New York.

53. On information and belief, and subject to production of the record, ICE did not possess a properly completed and authorized administrative warrant before officers restrained Petitioner's liberty.

54. If Respondents claim a contemporaneous warrant existed, they must produce the signed original or native record, the exact time of issuance, the legal predicate, the identity

materials used, and evidence that the warrant existed before the seizure rather than after officers learned Petitioner's identity through the stop.

55. If Respondents claim the arrest was warrantless, 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) required a contemporaneous reason to believe Petitioner was likely to escape before a warrant could be obtained.

56. Petitioner argues that the present record contains no such finding and no facts capable of supporting one. Petitioner was sitting in his parked vehicle outside the fixed residence where he lives. Upon information and belief, he has lived in this country since he was eight years old, registered himself with the federal government through DACA, worked steadily in one trade, filed tax returns for many years, and has no criminal convictions. Furthermore, he has appeared at every scheduled court hearing in both his immigration and criminal proceedings.

57. Petitioner was not running, hiding, using a false identity, attempting to leave the country, evading officers, or engaged in any unfolding crime. He was outside his own home.

58. If officers created an I-200, I-205, I-213, custody form, database memorandum, or declaration after the seizure, that later paperwork cannot supply the objective basis and legal authority missing when liberty was taken.

**E. No Identified Statutory Basis and No Individualized Custody Decision**

59. Respondents have not yet, to our knowledge, identified whether they claim Petitioner is detained under 8 U.S.C. § 1225, § 1226(a), § 1231(a)(2), § 1231(a)(5), § 1231(a)(6), § 1357(a)(2), or another provision.

60. They have not produced a record showing that any officer considered danger, flight risk, family ties, residence, work history, tax history, medical needs, the citizenship of Petitioner's daughter, or alternatives to detention.

61. To our knowledge, they have not explained why reporting, electronic monitoring, telephonic check-ins, address verification, a bond, or another condition would be inadequate.

62. They have not identified any mandatory-detention predicate. Upon information and belief, Petitioner has no criminal convictions of any kind.

63. They have not produced a removal order, a reinstatement determination, a removal plan, a travel document, or any operational record showing when or how removal could occur. The known facts do not show that Petitioner was ever removed, departed under any order, or reentered after removal, indispensable predicates to reinstatement under 8 U.S.C. § 1231(a)(5).

64. The Government therefore has not answered the essential questions: what document authorized the seizure; what statute governs custody; what event triggered that statute; what officer made the decision; and what present immigration purpose requires incarceration rather than supervision.

**F. Transfer to MDC Brooklyn Threatens Effective Review**

65. After the Bay Shore arrest, ICE transferred Petitioner to MDC Brooklyn. The ICE detainee locator identifies him as confined at the Metropolitan Detention Center in Brooklyn, New York.

66. The transfer removed Petitioner from the place where he lived, worked, and was arrested. It made communication with his mother, his daughter, and counsel more difficult.

67. Each day of detention deprives his daughter and mother of his presence and support and, upon information and belief, endangers his health given his hypertension and need for daily medication.

68. Further transfer or removal before production of the record would frustrate counsel access and could defeat meaningful review. Temporary restraints are therefore necessary to preserve the writ.

**G. Petitioner Presents No Known Danger and Has Overwhelming Reasons to Appear**

69. Upon information and belief, Petitioner has no criminal convictions of any kind.

70. He has not been accused of violence, threats, weapons possession, or gang activity, and has no history of any conduct presenting a present danger.

71. He has a stable residence in Bay Shore, New York; a United States citizen daughter; his mother; approximately thirty-four years of continuous presence since childhood; a grant of deferred action from the Government itself; and, upon information and belief, many years of steady work and tax filings.

72. Petitioner, through counsel, intends promptly to pursue every immigration remedy available to him. That intended litigation gives him another additional reason to remain available, communicate with counsel, and appear for every required proceeding, as he has been doing for at least over a decade.

73. Petitioner is willing to comply with reasonable reporting requirements, electronic monitoring, telephonic or in-person check-ins, address verification, a reasonable bond, or any other lawful condition.

74. He can return immediately to his established residence in Bay Shore, New York. His residence, family responsibilities, decades of continuous presence, work and tax history, and intended immigration litigation provide reliable means to assure appearance without incarceration.

**THE LEGAL FRAMEWORK**

75. Habeas corpus is the traditional remedy for unlawful executive detention. Boumediene v. Bush, 553 U.S. 723, 779 (2008), requires meaningful review with power to order release. The usual remedy for unlawful executive detention is release. Munaf v. Geren, 553 U.S. 674, 693 (2008).

76. For a person arrested in the interior of the United States pending a decision on whether he is to be removed, the default detention authority is 8 U.S.C. § 1226(a), which authorizes arrest and detention "[o]n a warrant issued by the Attorney General." A warrant is the statutory default; warrantless arrest is permitted only through the separate and narrower authority of 8 U.S.C. § 1357(a)(2).

77. A warrantless interior immigration arrest is permitted only when an officer has reason to believe the person is in violation of immigration law and is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii); Arizona v. United States, 567 U.S. 387, 407–08 (2012). The statute is conjunctive: suspicion of an immigration violation, without an escape finding, does not authorize a warrantless arrest.

78. ICE regulations distinguish consensual questioning from detention. Officers may ask questions without suspicion only while they do not restrain a person's freedom to walk away; a brief detention requires reasonable suspicion based on specific, articulable facts; and arrest requires the additional authority and procedures prescribed by law, including that the arresting officer identify himself and state the reason for the arrest. 8 C.F.R. § 287.8(b)–(c).

79. Probable cause, reasonable suspicion, and statutory arrest authority must exist when the seizure occurs. Later facts cannot repair a seizure that lacked lawful authority at its inception. Beck v. Ohio, 379 U.S. 89, 96 (1964); United States v. Di Re, 332 U.S. 581, 595 (1948).

80. Section 1231 governs detention only where there is an administratively final (or validly reinstated) order of removal. Johnson v. Guzman Chavez, 594 U.S. 523, 529, 533–35 (2021). Its mandatory-detention command applies only during the defined ninety-day removal period, 8 U.S.C. § 1231(a)(1)–(2), and any post-period detention under § 1231(a)(6) is limited by statutory purpose and the Constitution to a period reasonably necessary to bring about removal. Zadvydas, 533 U.S. at 689, 699–701.

81. Agencies must follow regulations designed to protect individual liberty. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 267–68 (1954). Due process also requires notice and a meaningful opportunity to contest detention before a neutral decisionmaker. Mathews v. Eldridge, 424 U.S. 319, 333–35 (1976).

## CLAIM ONE

## RESPONDENTS HOLD PETITIONER WITHOUT ANY IDENTIFIED LAWFUL STATUTORY BASIS

82. Petitioner repeats and incorporates all preceding paragraphs.

83. Executive detention is lawful only if a statute authorizes it and the statute's predicates and procedures were actually satisfied. Section 2243 requires Respondents to certify the true cause of detention; a habeas return must answer with an identified statute and a completed process, not a label.

84. Respondents, to date, have identified no statute. On the facts presently known, no statute has been shown to fit. Section 1231 presupposes a final removal order, and none is known to exist. Section 1226(a) presupposes arrest "on a warrant," and no warrant has been shown or produced. Section 1357(a)(2) presupposes a contemporaneous likely-to-escape finding, and none

has been disclosed or could be supported by these facts. Section 1225 addresses applicants for admission, not a man arrested outside his own home after more than three decades in this country.

85. Courts in this District have required the Government to demonstrate a present statutory basis for custody rather than assume one. See Gopie v. Lyons, No. 25-CV-05229 (SJB), 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (granting habeas relief where ICE arrested the petitioner before it had statutory authority to do so and holding that post-arrest paperwork could not cure the defect); Parada Cruz v. Mullin, Nos. 26-CV-1110 & 26-CV-1122 (SJB), 2026 WL 1027441 (E.D.N.Y. Apr. 16, 2026).

86. A statutory citation supplied for the first time after litigation begins cannot substitute for the authority and process the law required before or when custody was imposed. Liberty cannot depend on the Government selecting a detention theory after arrest and after counsel comes to court. See Gopie v. Lyons, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (rejecting post-arrest issuance of warrant and charging paperwork as a cure for an arrest made without authority); Huang v. Almodovar, No. 25 Civ. 9346 (DEH), 2025 WL 3295912, at *4 (S.D.N.Y. Nov. 26, 2025) (ordering release where the Government's shifting justifications for custody failed to establish lawful authority).

87. Because Respondents hold Petitioner without an identified and demonstrated statutory basis, his detention is unlawful and the writ should issue.

## CLAIM TWO

## THE WARRANTLESS ARREST VIOLATED THE FOURTH AMENDMENT, 8 U.S.C. § 1357(a)(2), AND DHS REGULATIONS

88. Petitioner repeats and incorporates all preceding paragraphs.

89. ICE seized Petitioner in the interior of the United States while he sat in his parked vehicle outside his home. On information and belief, no judicial warrant was shown, no administrative warrant has been produced, and no contemporaneous escape-risk determination has been made or disclosed.

90. The Fourth Amendment requires at least reasonable suspicion based on objective and particularized facts for a brief investigative detention. Terry v. Ohio, 392 U.S. 1, 21–22 (1968). Officers may not detain a person merely to demand identity without such a basis. Brown v. Texas, 443 U.S. 47, 51–52 (1979). Perceived Latino or Hispanic appearance cannot by itself supply reasonable suspicion. United States v. Brignoni-Ponce, 422 U.S. 873, 884–87 (1975).

91. Respondents have articulated no basis, individualized or otherwise, for seizing Petitioner outside his residence. He was not committing any offense, was not evading anyone, and was not doing anything other than sitting in his own parked vehicle outside his own home.

92. ICE's own regulation tracks the constitutional principles. An officer may ask questions without suspicion only so long as the person remains free to walk away. A brief detention requires reasonable suspicion based on specific articulable facts. 8 C.F.R. § 287.8(b)(1)–(2). An arrest requires either a warrant or the narrow warrantless-arrest authority, together with self-identification and a statement of the reason for arrest. Id. § 287.8(c)(2)(ii)–(iii).

93. If ICE relied on an I-200, I-205, or another administrative warrant, Respondents must produce the signed document, its exact time of issuance, its legal predicate, and the records showing how officers identified Petitioner before the seizure.

94. If ICE proceeded without a warrant, § 1357(a)(2) is conjunctive. Officers needed both reason to believe Petitioner violated immigration law and reason to believe he was likely to escape before a warrant could be obtained. Arizona, 567 U.S. at 407–08.

95. The known facts defeat imminent escape. Petitioner was parked outside the fixed residence where he lives. Upon information and belief, he has spent more than three decades in this country since childhood, registered with the Government through DACA, filed taxes for many years, worked steadily, and has no criminal convictions. He was not fleeing; he was at home.

96. Probable cause, reasonable suspicion, and statutory arrest authority must be judged from facts known when the seizure occurred. Beck, 379 U.S. at 96. A database search, warrant, declaration, or custody theory created later cannot travel backward in time.

97. Recent courts have rejected arrest-first, paperwork-later immigration enforcement. See Parada Cruz v. Mullin, Nos. 26-CV-1110 & 26-CV-1122 (SJB), 2026 WL 1027441 (E.D.N.Y. Apr. 16, 2026); Gopie v. Lyons, No. 25-CV-5229 (SJB), 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025); Cartagena Jaco v. Mullin, No. 26-CV-04798 (JPO), slip op. at 6–10 (S.D.N.Y. 2026) (paperwork completed after custody began could not cure a detention that lacked a lawful predicate when imposed); Flores v. Mullin, No. 26-CV-01855 (GRB), ECF No. 12, at 3–7 (E.D.N.Y. Apr. 8, 2026) (granting relief where the Government made no showing of the likely-to-escape finding required for a warrantless arrest).

98. The Court should require production of any I-200, I-205, I-213, target or operational materials, body-worn-camera and vehicle footage, audio, surveillance records, database-query logs, radio communications, custody forms, and supervisory approvals concerning the July 21 operation. Those records will permit the Court to determine whether any lawful basis existed before the stop or was created after it.

99. If those records do not establish lawful authority at the moment Petitioner was seized, and no independent lawful custody process intervened, continued custody flowing from that seizure is unlawful and release is the appropriate habeas remedy. In Gopie v. Lyons, No. 25-

CV-05229 (SJB), 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025), the court granted habeas relief and ordered the petitioner released where ICE arrested and detained a New York resident before it had statutory authority to do so, holding that post-arrest paperwork could not retroactively supply the authority missing when the arrest occurred. Where detention is unlawful ab initio, the appropriate and commensurate remedy is immediate release, and the Court should not permit Respondents to retroactively justify an unlawful detention through post hoc recharacterization of statutory authority.

**CLAIM THREE**

**SECTION 1226(a) SUPPLIES NO AUTHORITY, NO DECISION ON REMOVAL WAS PENDING, NO WARRANT ISSUED, AND NO LAWFUL CUSTODY DETERMINATION FOLLOWED**

100. Petitioner repeats and incorporates all preceding paragraphs.

101. Section 1226(a) authorizes arrest and detention only "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). That authority is expressly tethered to a live adjudication. Section 1226 governs detention before a decision on removal; § 1231 governs only once an order of removal is administratively final. Johnson v. Guzman Chavez, 594 U.S. 523, 529, 533–35 (2021).

102. Upon information and belief, Petitioner's removal proceedings were administratively closed in or about 2014 and have never been recalendared. Administrative closure is a docket-management device that temporarily removes a case from an Immigration Judge's active calendar; it is not an order of removal, it does not resolve removability, and it decides nothing. Matter of Avetisyan, 25 I&N Dec. 688, 692, 694 (BIA 2012); Matter of W-Y-U-, 27 I&N Dec. 17 (BIA 2017); Matter of Cruz-Valdez, 28 I&N Dec. 326 (A.G. 2021)1003.1(l).

103. On July 21, 2026, therefore, no decision on whether Petitioner is to be removed was pending anywhere. No hearing was scheduled. No application was under consideration. No Immigration Judge had been asked to decide anything, and none had authority to do so unless and until the case returned to the calendar.

104. Respondents accordingly lacked the statutory predicate for a § 1226(a) arrest. Had Respondents wished to detain Petitioner pending a decision on removal, the law required them first to move to recalendar the administratively closed proceedings and thereby create the pending decision that § 1226(a) presupposes. 8 C.F.R. § 1003.18(c).

105. Upon information and belief, Respondents never did so, and no motion to recalendar was pending when they seized him. They arrested first. Agencies must follow the regulations that govern their own procedures, particularly where those regulations protect individual liberty. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 267–68 (1954).

106. Independently, if Respondents now claim that Petitioner is detained under 8 U.S.C. § 1226(a), that statute authorizes arrest "on a warrant issued by the Attorney General." No warrant has been shown, served, or produced.

107. Nor did Respondents comply with the only alternative, the warrantless-arrest authority of § 1357(a)(2), because no likely-to-escape finding has been disclosed and none could be supported on these facts. An arrest that satisfies neither the warrant requirement nor the warrantless-arrest statute is not a lawful § 1226(a) arrest.

108. Detention under § 1226(a) is discretionary, not mandatory. It presupposes an individualized custody determination and access to review of that determination. Respondents have produced no custody determination of any kind, no consideration of danger, flight risk, family ties, medical needs, tax history, or alternatives to detention.

109. Nor may Respondents cure the defect after the fact. Statutory arrest authority is judged from the facts and legal predicates that existed when the seizure occurred. Beck v. Ohio, 379 U.S. 89, 96 (1964); United States v. Di Re, 332 U.S. 581, 595 (1948).

110. If Respondents move to recalendar Petitioner's proceedings now after his arrest, after his transfer to MDC Brooklyn, and after counsel came to this Court that motion cannot retroactively supply the pending decision that § 1226(a) required on July 21, 2026. Paperwork generated after custody begins does not cure a detention that lacked a lawful predicate when imposed.

111. Petitioner does not ask this Court to conduct a bond hearing in place of the agency. He asks the Court to hold that custody imposed through an unlawful arrest, without any pending removal decision, and maintained without any individualized determination, is unlawful at its inception, and that the remedy for unlawful executive detention is release. Munaf, 553 U.S. at 693.

112. At an absolute minimum, due process and the statute required a prompt, individualized custody decision by an identified decisionmaker applying the correct legal standard. None has been produced. Continued detention without it violates § 1226(a), the governing regulations, and the Fifth Amendment.

**CLAIM FOUR**

**SECTION 1225 CANNOT BE STRETCHED TO COVER THE ARREST OF A LONG-TERM RESIDENT**

113. Petitioner repeats and incorporates all preceding paragraphs.

114. Respondents cannot avoid the defects above by relabeling Petitioner as an "applicant for admission" subject to § 1225(b)(2). Respondents cannot relabel Petitioner an applicant for admission when DHS itself elected to proceed against him under section 240 of the

Act and then agreed to administratively close those very proceedings. Having chosen the § 240 track and paused it for twelve years, Respondents may not now claim he was all along subject to a wholly different detention regime.

115. He was arrested outside his home in Bay Shore, New York, after more than three decades of residence in the interior of the United States residence during which the federal government itself granted him deferred action, employment authorization, and a Social Security number not while seeking admission at a port of entry.

116. The Second Circuit has rejected that post-hoc § 1225 theory for long-present interior residents and required custody to proceed, if at all, under a statute that affords meaningful individualized process. See Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Rodriguez-Acurio v. Almodovar, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025) (§ 1225 applies only to individuals actually seeking admission; noncitizens already residing in the United States are governed by § 1226(a)); Landaverde v. Genalo, No. 25-cv-09330 (AS), Order at 1 (S.D.N.Y. Jan. 12, 2026).

117. Petitioner recognizes that Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (B.I.A. 2025), adopted a contrary agency view for some persons present without admission. He preserves the argument that an agency interpretation cannot cure an unlawful seizure, erase habeas jurisdiction, or authorize detention under a statute that does not fit his actual procedural posture.

118. Because § 1225 does not fit Petitioner's circumstances, it supplies no authority for his custody.

**CLAIM FIVE**

**SECTION 1231 SUPPLIES NO AUTHORITY: PROCEEDINGS WERE ADMINISTRATIVELY CLOSED AND NO FINAL ORDER EXISTS**

119. Petitioner repeats and incorporates all preceding paragraphs.

120. Section 1231 governs custody only where an administratively final (or validly reinstated) order of removal exists. Guzman Chavez, 594 U.S. at 529, 533–35. Petitioner's proceedings were administratively closed in or about 2014, which this counsel understands is the antithesis of a final order, and no administratively final removal order has ever been entered against him. Section 1231 does not apply at all.

121. If Respondents contend that an order exists, they bear the burden of producing it, together with the charging document, the record of proceedings, and proof of service of any notice to appear or hearing notice. An order entered without notice reasonably calculated to reach Petitioner cannot quietly become the foundation for incarceration decades into his life in this country.

122. Even if an old order were produced. for example, an order entered in absentia at some point during Petitioner's more than three decades in the United States — the ninety-day removal period tied to that order would have begun when the order became administratively final, 8 C.F.R. § 1241.1(e); 8 U.S.C. § 1231(a)(1)(B), and would have expired long before the July 21, 2026 arrest.

123. Section 1231(a)(2) is a clock, not a switch. It commands detention during "the removal period." It does not authorize DHS to wait many years, make a new arrest outside a man's home, and call the first ninety days of that new custody the original statutory removal period. See Gopie v. Lyons, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025); Melgar-Melgar, No. 1:26-cv-12410-JEK, ECF No. 15, at 5–8 (D. Mass. June 10, 2026) (an old in absentia order does not

give ICE a "free-roaming right to arrest and detain people any time it sees fit" after the removal period expires).

124. 1Nor could Respondents show tolling under § 1231(a)(1)(C), which requires affirmative conduct that actually prevents removal. Upon information and belief, Petitioner lived openly, registered himself with the federal government through DACA, worked, filed taxes in his own name for many years, and remained with his family in New York. The Government cannot convert its own inaction into misconduct by Petitioner, nor equate ordinary community life with an affirmative act that stopped removal. See Gopie, 2025 WL 3167130, at *1.

125. Reinstatement under § 1231(a)(5) is equally unavailable. It requires a prior removal or departure under an order, correct identity, and unlawful reentry, established through the procedures of 8 C.F.R. § 241.8, including written notice and an opportunity to contest. The known facts show none of those predicates: upon information and belief, Petitioner has never been removed from the United States and has never departed under any order. See Cartagena Jaco, No. 26-CV-04798 (JPO), slip op. at 6–10 (§ 241.8 safeguards are not formalities and post-hoc completion cannot cure detention that lacked a lawful predicate when imposed); Flores, No. 26-CV-01855 (GRB), ECF No. 12, at 3–7.

126. Finally, even where § 1231(a)(6) applies, detention must be tethered to a concrete, present removal process. Zadvydas, 533 U.S. at 689, 699–701; Clark v. Martinez, 543 U.S. 371, 378 (2005). Respondents have produced no travel document, no request for travel documents, no communication with Ecuador, no acceptance record, no itinerary, and no operational step toward removal. Courts in this Circuit have required facts rather than prediction in § 1231 cases. See Huang v. Almodovar, No. 25 Civ. 9346 (DEH), 2025 WL 3295912, at *4 (S.D.N.Y. Nov. 26, 2025); Gopie v. Lyons, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025).

127. Because no final order is known to exist, any old order's removal period would have expired long ago, no tolling has been shown, no reinstatement predicates are known, and no concrete removal process appears in the record, § 1231 provides no basis for custody and the writ should issue.

## CLAIM SIX

## DHS DETAINED PETITIONER WITHOUT THE INDIVIDUALIZED CUSTODY DECISION DUE PROCESS REQUIRES

128. Petitioner repeats and incorporates all preceding paragraphs.

129. Civil immigration detention is a severe deprivation of liberty. It must serve a legitimate, nonpunitive purpose and must be imposed through a process that meaningfully tests whether detention is necessary in the individual case. Mathews requires procedures calibrated to the liberty at stake and the risk of error. 424 U.S. at 333–35.

130. 120. The risk of error here is exceptionally high because DHS has produced no contemporaneous decision considering Petitioner's actual circumstances — indeed, it has not even identified the statute under which it claims to hold him.

131. Those circumstances strongly favor release: upon information and belief, no criminal convictions; a fixed home in Bay Shore, New York; approximately thirty-four years of continuous presence since childhood; a grant of deferred action from the Government itself; years of employment and tax filings; a United States citizen daughter; his mother; and a documented medical condition requiring daily medication.

132. A meaningful custody decision would have asked whether reporting, bond, electronic monitoring, telephonic check-ins, or address verification could satisfy any legitimate concern. The present record shows no such inquiry.

133. Because no individualized custody determination has been produced and the record strongly supports release under conditions, continued detention violates due process.

## CLAIM SEVEN

## IMMEDIATE RELEASE AND TEMPORARY RELIEF ARE WARRANTED

134. Petitioner repeats and incorporates all preceding paragraphs.

135. A temporary restraining order or preliminary injunction may issue when the movant shows a likelihood of success and irreparable harm, after which the Court balances the equities and public interest, factors that merge when the Government is the opposing party. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); New York v. U.S. Dep't of Homeland Sec., 969 F.3d 42, 58–59 (2d Cir. 2020).

136. Habeas bail is available in extraordinary circumstances where a petitioner presents substantial claims and release is necessary to make the habeas remedy effective. Mapp v. Reno, 241 F.3d 221, 226 (2d Cir. 2001).

137. Petitioner is likely to succeed because Respondents have identified no statutory basis for custody; no removal order is known to exist; no warrant has been shown or produced; no contemporaneous escape-risk finding has been disclosed; no individualized custody decision has been made; and no concrete removal process appears in the record. Each defect independently

supports the writ. See Maldonado, ECF No. 14; Mendez Ochoa, ECF Nos. 17, 19; Flores, ECF No. 12; Cartagena Jaco, slip op. at 6–10.

138. The harm is immediate and irreparable. Every day of detention is a continuing deprivation of liberty that no later merits decision can restore. Every day also separates a United States citizen child from her father and, upon information and belief, endangers Petitioner's health given his hypertension and dependence on daily medication, while his family attempts, from another state, to learn even the claimed basis for his custody.

139. Transfer or removal before counsel obtains the record and the Court determines the true cause of detention could destroy meaningful review. Temporary preservation is necessary to make habeas effective. Ex parte Endo, 323 U.S. at 306–07.

140. The equities strongly favor release. Upon information and belief, Petitioner has no criminal convictions, a fixed home, decades of continuous presence since childhood, years of work and tax filings, a United States citizen daughter, a medical condition better managed in the community, an intention to pursue immigration relief through counsel, and every incentive to remain available. Reasonable conditions — reporting, monitoring, address verification, or a reasonable bond set by this Court — can address any legitimate governmental concern.

141. The Government has no legitimate interest in detention without an identified statute, without a warrant, without an escape finding, and without an individualized custody decision. The public interest is served when federal officers follow the Constitution, statutes, and their own regulations, and when courts can review executive detention before transfer or removal renders review ineffective.

142. The requested interim relief is narrow. Petitioner asks the Court to preserve his location, access to counsel, and availability; preserve the arrest evidence; and require production of records that should already exist if custody is lawful.

143. The Court should order immediate release under reasonable supervision. In the alternative, it should grant habeas bail pending an expedited return and evidentiary hearing.

## REQUEST FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. assume jurisdiction over this Petition and issue an immediate order to show cause requiring Respondents to certify the true statutory and factual cause of detention under 28 U.S.C. § 2243;

2. grant the writ and order Petitioner's immediate release under reasonable conditions of supervision;

3. temporarily restrain Respondents from transferring Petitioner outside the Eastern District of New York, or outside New York and New Jersey, moving him to an undisclosed location, or removing him from the United States until the Court can conduct meaningful habeas review;

4. direct Respondents immediately to disclose Petitioner's exact location, housing unit, deportation officer, immediate custodian, and custody classification; the claimed statutory basis for detention; and any scheduled transfer or removal plans;

5. direct Respondents to provide counsel with immediate and confidential telephone, video, and in-person access to Petitioner, and to ensure Petitioner's continued access to his daily prescribed medication;

6. direct Respondents, within twenty-four hours or such shorter period as the Court orders, to produce every record supporting arrest and detention, including any Form I-200, I-205, I-213, I-247, or I-871; any charging document, removal order, and proof of service of any notice of

proceedings; any custody determination, risk assessment, or supervisory approval; any medical screening and medication records; and any travel-document request, consular communication, acceptance record, itinerary, or transfer record;

7. direct Respondents to preserve and produce all operational materials concerning the July 21, 2026 arrest, including any target or identification materials, operational plans, surveillance records, body-worn-camera, vehicle-camera, and audio recordings, database-query logs, radio and electronic communications, and all officer notes and reports;

8. conduct an expedited evidentiary hearing under 28 U.S.C. § 2243 and require Respondents to produce the officers and records necessary to establish what authority and objective facts existed when Petitioner was first restrained;

9. declare that Respondents may not rely on 8 U.S.C. § 1225, § 1226, § 1231, § 1357(a)(2), or any other detention provision unless they establish the applicable predicates and procedures with competent evidence;

10. declare that Respondents may not detain Petitioner under 8 U.S.C. § 1226(a) unless and until his removal proceedings are lawfully recalendared and a warrant issues, and that any recalendaring effected after July 21, 2026 does not retroactively validate his July 21, 2026 arrest;

11. order that Petitioner not be re-detained on the same record absent a materially supportable lawful basis and constitutionally adequate notice and process;

12. direct Respondents to return all identification, money, clothing, and other personal property seized from Petitioner and remaining in their custody;

13. award reasonable fees and costs to the extent permitted by law, including under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), if applicable; and

14. grant such other and further relief as law and justice require.

Respectfully submitted,

Dated: August 6, 2026

White Plains, NY

s/ Peter Kapitonov
Peter Kapitonov, Esq.
MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
peter.kapitonov@gmail.com
718-803-1000

s/ S. Michael Musa-Obregon
S. Michael Musa-Obregon
MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
molawfirml@gmail.com
718-803-1000