UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
EDGAR SANTIAGO ASIMBAYA JARAMILLO,

Petitioner,

v.

**ORDER**
26-CV-4813-SJB

RAUL MALDONADO, et al.,

Respondents.
---------------------------------------------------------------X
**BULSARA, United States District Judge:**

Petitioner Edgar Santiago Asimbaya Jaramillo ("Petitioner"), a citizen of Ecuador who has lived in the United States for more than three decades since he was eight years old, was arrested on July 21, 2026, by U.S. Immigration and Customs Enforcement ("ICE") officers. (Pet. for Writ of Habeas Corpus filed Aug. 6, 2026 ("Pet."), Dkt. No. 1 ¶¶ 4–5). He has filed a petition seeking release, (*id.* ¶ 11), having been detained for the last several weeks, currently at the Metropolitan Detention Center in Brooklyn, (*id.* ¶ 5; Resp'ts' Letter filed Aug. 10, 2026, Dkt. No. 8 at 3). For the reasons explained below, the writ is provisionally granted.

Petitioner came to the United States in 1992. (Pet. ¶ 4). In September 2009, he was issued a Notice to Appear ("NTA"), and a few weeks later, he was granted bond in the amount of $ 10,000 by an Immigration Judge ("IJ"). (Resp'ts' Letter at 2). His immigration proceedings were then administratively closed in May 2014, and he was approved for Deferred Action for Childhood Arrivals ("DACA") in October 2014. (*Id.*). His application to renew his DACA in 2022 was denied. (*Id.*). In June 2025, DHS moved to recalendar Petitioner's immigration proceedings. (*Id.*). Petitioner has two

convictions for disorderly conduct and criminal mischief from 2005 and 2009, and several pending drug charges between 2024 and 2026, none of which have reached a final disposition. (*Id.* at 2–3). Respondents state that ICE issued an I-200 arrest warrant on July 15, 2026, and effectuated the arrest on July 21, 2026, pursuant to 8 U.S.C. § 1226(a). (*Id.* at 3). They say that during processing, he was served with a copy of the I-200, and an individualized custody determination was conducted, resulting in a decision to detain him. (Resp'ts' Letter at 3).

The NTA, pursuant to which the I-200 was issued, is invalid, because it does not have a date, time, or place at which to appear. (*See* 2009 NTA, attached to Resp'ts' Letter, Dkt. No. 8-3). The Supreme Court held in *Pereira* that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a notice to appear under section 1229(a)," finding that "[f]ailing to specify integral information like the time and place of removal proceedings unquestionably would deprive the notice to appear of its essential character." *Pereira v. Sessions*, 585 U.S. 198, 202, 214 (2018) (cleaned up); *see also Niz-Chavez v. Garland*, 593 U.S. 155, 170–71 (2021); *Campos-Chaves v. Garland*, 602 U.S. 447, 461 (2024) ("Each alien's NTA provided only that the time of the hearing was 'TBD' or 'to be set,' which is the sort of language we found to be inadequate in *Pereira*.").

This defect renders the July 15, 2026 arrest warrant, which Respondents rely upon as the basis for Petitioner's arrest, invalid. *See* 8 C.F.R. § 1236.1(b) ("At the time of the issuance of the notice to appear [NTA], or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into

custody under the authority of Form I-200, Warrant of Arrest."); *e.g.*, *Parada Cruz v. Mullin*, -- F. Supp. 3d --, No. 26-CV-1110, 2026 WL 1027441, at *2 (E.D.N.Y. Apr. 16, 2026) (finding petitioner's "essentially blank" NTA with "no date or time to appear" invalid and explaining that ICE could not arrest petitioner "pursuant to an I-200 warrant" without "open removal proceedings reflected in a valid NTA"). "The NTA begins the removal process, and at that time or after its issuance, the Government can then effectuate [an] arrest, and, if necessary, detention, until removal proceedings are completed." *Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (citing *Niz-Chavez*, 593 U.S. at 157–58). The NTA is the immigration version of a "charging instrument," and the I-200 is the warrant that follows. Put differently, "[i]f ICE wants to use a warrant, it must have a *valid* NTA in place." *Parada Cruz*, 2026 WL 1027441, at *2 (emphasis added).

To date, Respondents appear to have *never* issued or served a valid NTA on Petitioner. (*See* Resp'ts' Letter at 3–4 (explaining that no new NTA was required or issued)). Because there was no valid NTA in place at the time of Petitioner's arrest, that arrest was illegal. *See Gopie*, 2025 WL 3167130, at *1 (holding that ICE lacked the authority to effectuate an arrest pursuant to an I-200 where there was no NTA in place at the time of petitioner's arrest); *Yeleshev v. Larocco*, No. 26-CV-2294, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026) (same), *appeal docketed*, No. 26-1898 (2d Cir. July 14, 2026).

Moreover, as in *Yeleshev*, ICE's failure to issue a valid NTA before arresting Petitioner is unjustified. ICE has known of Petitioner since at least 2009, long before his

July 2026 arrest. Respondents provide no justification as to why they did not issue a valid NTA in the last 17 years.

There is yet another, separate problem with Petitioner's arrest. While contending that Petitioner is still in ongoing removal proceedings to explain away the deficient NTA, Respondents never explain the basis for an ICE officer's apparent unilateral override of the bond granted by an IJ. Indeed, their course of conduct suggests that an IJ's bond decision is virtually meaningless—it can be granted one day and revoked by ICE the next, with no additional process or hearing before such a deprivation. *Cf. J.M.P. v. Arteta*, 807 F. Supp. 3d 265, 289 (S.D.N.Y. 2025) (holding unconstitutional a related process that "permits an agency official who is also a participant in the adversarial process to unilaterally override the immigration judge's decisions, a procedure that is anomalous in our legal system" (quotation omitted)).

Even conditional release pursuant to Section 1226(a) creates an inherent liberty interest in an individual's continued release that is protected by the Due Process Clause. *See Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. July 17, 2025) (finding due process protections applied where petitioner was detained, released on bond, and later re-detained without notice). Across the country, Respondents and courts have been unable to cite any context "in which government agents could permissibly take someone who had been released by a judge, lock up that person, and have no hearing either beforehand or promptly thereafter." *Id.* at 1033 ("To the contrary, numerous district courts have uniformly recognized that there are, at the very least, serious questions as to whether due process requires non-citizens released by a valid order

from an IJ to receive a hearing before a neutral arbiter either before or immediately after re-detention."). And the substantial risk of an erroneous deprivation of a liberty interest here, without a pre-detention hearing before a neutral arbiter, supports finding a due process violation.[1] *Id.*

And where there has been a violation of that protected liberty interest here with no apparent justification or urgency, release is the appropriate remedy. *Cf. Mohit v. Mullin*, No. 26-CV-3396, 2026 WL 1536781, at *3 (E.D. Cal. June 1, 2026) ("Petitioner's pending criminal charges are insufficient to require a post-deprivation hearing instead of immediate release as the remedy in this case."), *report and recommendation adopted*, 2026 WL 1678344 (June 10, 2026).

Because Petitioner's arrest was illegal, the writ is provisionally granted. Respondents are directed to effectuate Petitioner's release by **August 12, 2026 at 5:00 P.M.** and file a letter on the docket confirming his release by that time. Respondents are enjoined from detaining Petitioner absent further direction from this Court. Respondents may not use ICE ankle monitors or similar technology to monitor Petitioner, because in this Order the Court provisionally grants the writ.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date: August 12, 2026
Central Islip, New York

---

[1] "Taken to its logical extreme, this position would permit ICE to regularly re-detain individuals released by an IJ on bond over ICE's objections . . . even if the re-detention occurred within days of their release and without any material change in circumstances. . . . That is a recipe for arbitrary and erroneous deprivations of liberty." *Guillermo M.R.*, 791 F. Supp. 3d at 1035.